**RECORD NO. 16-4475**

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

CHARLES IMARIAGBE,

*Defendant - Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(HON. ELLEN L. HOLLANDER U.S. DISTRICT COURT JUDGE)

**REPLY BRIEF OF APPELLANT**

Marta K. Kahn
THE LAW OFFICE
OF MARTA K. KAHN, LLC
8 East Mulberry Street
Baltimore, MD 21202
(410) 299-6966
mkkahn@yahoo.com

*Counsel for Appellant
Charles Imariagbe*

LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia 23219 (804) 644-0477
A Division of Lantagne Duplicating Services

# **TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     The Lower Court Erred When it Permitted the Government to Introduce a Chart Reflecting the Government's Opinion that Mr. Imariagbe had Committed Other, Similar Bad Acts, in Lieu of Evidence He Committed Those Acts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.     The Government's Speculation as to What Mr. Imargiabe Intended or Knew is Not Relevant or Probative Evidence . . . . . . . . 1

     B.     The Evidence was Highly Prejudicial . . . . . . . . . . . . . . . . . . . . . . . 6

     C.     The Error was Not Harmless . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

**Federal Cases**

*United States v. Afjehei*, 869 F.2d 670 (2nd Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Hernandez*, 975 F.2d 1035 (4th Cir. 1992) . . . . . . . . . . . . . . . . . 7

*United States v. Johnson*, 617 F.3d 286 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . 7, 8

*United States v. Lee*, 60 Fed. App'x 425 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . 4

*United States v. McBride*, 676 F.3d 385 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . 7,8

*United States v. Mitts*, 396 Fed. App'x 296 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . 4

*Untied States v. Togo-Ngososso*, 407 Fed. App'x 689 (4th Cir. 2011) . . . . . . . . . 2

**Federal Statutes**

18 U.S.C. § 1341 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Federal Rules**

Federal Rule of Evidence 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Federal Rule of Evidence 404(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

# ARGUMENT

**I. The Lower Court Erred When it Permitted the Government to Introduce a Chart Reflecting the Government's Opinion that Mr. Imariagbe had Committed Other, Similar Bad Acts, in Lieu of Evidence He Committed Those Acts**

    A.   <u>The Government's Speculation as to What Mr. Imargiabe Intended or Knew is Not Relevant or Probative Evidence</u>

Mr. Imariagbe contends that in order to be relevant, necessary evidence, a prior act (and the intent with which it was done) must be proven by evidence from the witness stand. The Government cannot merely list acts, with no evidence as to the intent behind them, speculate as to what the defendant's intent was, then offer its speculation to the jury as "proof" that the defendant shared the same intent when he committed the collateral acts as it alleges he had when he committed the charged counts. Speculation as to intent is not probative, reliable evidence of intent. *See United States v. Afjehei*, 869 F.2d 670 (2nd Cir. 1989) (evidence that defendant took overseas trips that Government speculated were drug related was not relevant evidence that charged trip was drug related).

The Government tries to avoid the shortcomings of its other acts evidence by saying that the presence of similar information on the charged and uncharged returns makes it more likely that the information was made up by the defendant.

1

*See* Gov. at 9[1] ("the evidence suggested that the information, which contained similar business names and addresses, had a single source: defendant."); Gov. at 14 (the information on the uncharged returns "supported the government's theory that defendant was the source of the Schedule C information"); Gov. at 20 "(the extensive pattern of extremly similar business names and business addressed n the Schedules C of wholly unrelated taxpayers makes it more likely that defendant was the source of the false information.") In fact, the similarity of the information proves nothing about its source. The similarity makes it no more likely that Mr. Imariagbe came up with than groups of taxpayers conspired to do so.   Thus, the Government's assertion of the relevance of the "evidence" however, is based on nothing but the Government's *assumption* that the taxpayers are "wholly unrelated" and did not get together and decide to provide similar false information to obtain a refund to which they were not entitled.[2]   The Government's

---

[1]Mr. Imariagbe will cite to the Government's Brief in Opposition as "Gov." Any other cites to the transcript or exhibits not included in the Joint Appendix will be cited in the same manner by which the Government designated those materials in their brief.

[2]For example, Marcia Alston, the taxpayer on one of the charged returns, had a sister who ran a hair salon next door to the address listed for many of the "Anthony Fortune" hair salon entries. Alston's sister was married to Anthony Fortune. JA 44. It was certainly plausible that some of the information about the Fortune hair salons originated with them. It would also explain the variety of misspellings on the chart. If Mr. Imariagbe made up the information, presumably

assumptions do not substitute for probative, reliable evidence.[3]

Indeed, the cases cited by the Government prove this point. In *Untied States v. Togo-Ngososso*, 407 Fed. App'x 689-90 (4th Cir. 2011) (Gov. at 22), the Appellant was charged with seventeen counts of assisting in the preparation and

---

he would spell it the same way every time. Moreover, many of the taxpayers testified they referred each other to Mr. Imariagbe, so they were by definition, not "wholly unrelated." JA 65, 65A, 72, 93, 107.

[3]The lower court also reminded the Government that its conclusions about a defendant's intent and/or guilt are not evidence during the testimony of Agent Cascante cited in the Government's brief.

> Q.   .... So as you saw these characteristics of the Forms 1099, did you, did you yourself reach a conclusion as to whether they were legitimate 1099's?
>
> ****
>
> Q.   Okay. And did you tell him, did you tell him what you had concluded about those 1099s based upon those factors?
>
> Defense:   Objection.
>
> The Court:   Sustained. Approach.
>
> The Court:   You are invading the province of the jury. You don't get to ask him they were legitimate. .... He doesn't get to conclude.
>
> Government:   Okay. Very well.
>
> The Court:   Are you kididng me?

2 Tr. 135-136.

3

presentation of false tax returns.  The Government offered evidence that Togo-Ngosososo also prepared two false returns with which he was not charged.  This Court said the uncharged returns were admissible evidence of wilfulness. The difference between Togo-Ngosososo's case and this one, however, was that the evidence of the uncharged misconduct came from the mouths of the witnesses for whom Togo-Ngosososo prepared the returns.  They testified to the falsity of the information.  The Government did not simply list the information reflected on the returns on a chart and ask the jury to speculate that it was every bit as false as the charged returns.  *See also* Gov. at 22 (citing *United States v. Mitts*, 396 Fed. App'x 296, 300 (6th Cir. 2010) (five witnesses testified to falsity of information in uncharged returns)).[4]

    The Government cites to no case in which its agent was permitted to present a chart which, in essence said, "we think he falsified these also."   Actually, the Government goes so far as to say the summarization of the returns on a chart by an agent "corroborate[d] the witnesses' accounts of their interaction with the defeat

---

[4] *United States v. Lee*, 60 Fed. App'x 425, 427 (4th Cir. 2003), also cited by the Government for the principle that the chart was permissible to prove intent, is inapposite. There, the Court found that the admission of ninety six uncharged tax returns was not admitted under Fed R. Evid. 404(b) at all, but was intrinsic to the offense – likely the charged counts of mail fraud – which requires proof of scheme and artifice.   18 U.S.C. § 1341 (2000).

4

regarding the source of the false information on Schedules C." Gov. at 20. The chart provides no information about Mr. Imariagbe's "interaction" with anyone, and certainly not any information about the source of information that ended up on the returns.

In addition to arguing the admissibility based on its assumption regarding the sources of the information on the uncharged returns, the Government also says the similarity of the information on some of the charged and uncharged returns shows Mr. Imariagbe "must have been aware that he had prepared numerous tax returns with nearly-identical business names...." Gov. at 19. *See also* Gov. at 23 (the chart "is probative of whether defendant was aware that tax returns that he prepared listed business with nearly identical names operated by different taxpayers."); *See also* Gov. at 16 ("if defendant did not wholly create the false Schedule C information, he was certainly aware of the falsity of the information..."); *id.* ("evidence that additional non-charged returns contained Schedules C with similar business names and addresses supported the Government's theory that defendant was aware of the falsity of the Schedules C on the charged returns"). That awareness would depend, however, on how many returns Mr. Imariagbe prepared overall. If it were thousands, if he did countless returns day after day, it would be less likely he would catch on to this fraud that the

5

Government says is so obvious from the handful they selected to show the jury. Yet the overall number of returns that Mr. Imariagbe prepared was information that the Government specifically and vociferously objected to the jury's hearing at trial. 4 Tr. 96-97. The Government should be precluded from benefitting from its absence in advocating for the relevance of exhibit 203 now. [5]

    B.    <u>The Evidence was Highly Prejudicial</u>

The Government contends the evidence on chart 203 was not overly prejudicial. The Government is wrong. The Government charged only twenty counts, and offered evidence on fewer than that. It then told the jury that, in its opinion, Mr. Imariagbe had committed more than twice as many counts, and tidily provided them on a chart. That Mr. Imariagbe had supposedly, according to the Government, committed so many offenses, which cost the jurors money as taxpayers, was certainly likely to elicit an emotional reaction.

The similarity of the charged and uncharged counts does not assist the

---

[5] On some occasions, the Government claims the evidence in chart 203 was admissible to demonstrate that the businesses in the charged and uncharged Schedules C do not exist. On others, however, it says it did not seek to prove that point. *See* Gov. at 9 (chart 203 "made it highly improbable that such businesses were legitimate"); Gov. at 20 ("the sheer number of like-named buisnesses each operated by a different proprietor made it highly improbable that such businesses were legitimate."); *but see* Gov. at 13 ("the government did not attempt to prove that the information on these additional Schedules C was false.").

6

Government, either.  As noted in the opening brief, this Court has found evidence to violate step four of the *Queen* test when it was substantially similar to the charged conduct.  *See e.g. United States v. McBride*, 676 F.3d 385  (4th Cir. 2012) (defendant charged with distribution of powder cocaine, testimony regarding prior sale and manufacture of crack cocaine was more prejudicial than probative). *United States v. Hernandez*, 975 F.2d 1035 (4th Cir. 1992) (defendant charged with conspiracy to distribute cocaine, prior act statement of knowledge how to manufacture crack cocaine more prejudicial than probative).   The evidence was certainly not "sensational," as no evidence in a tax case is likely to be, but the Government offers no authority indicating that Fed. R. Evid. 403 can never apply to a tax case.

        C.    The Error was Not Harmless

The Government asserts three reasons that the lower court's error was harmless.  The arguments are without merit.

First, the Government says the error is harmless because the court offered an instruction regarding the jury's consideration of Exhibit 203.  The simple provision of an instruction does not per se render a error under Fed. R. Evid 404(b) harmless.  As this Court stated in *United States v. Johnson*, 617 F.3d 286, 297 (4th Cir. 2010), "[t]he meager protection afforded by the court's limiting instruction, however,

7

cannot outweigh the prejudice incurred by evidence that does not meet the mandate of the rule in the first instance." *See also McBride*, 676 F.3d at 399 n. 5 ( "A jury instruction...does not necessarily rescue the use of otherwise inadmissible evidence."). In this case, the instruction given was particularly unlikely to cure the error as it was extremely confusing. It instructed the jury it could only consider the evidence in chart 203 as evidence of the charged offenses, if it found the defendant guilty of the uncharged acts, which it could only do if it found Mr. Imariagbe guilty of the charged offenses.[6]

Second, the Government also contends the evidence was "cumulative" to a handwritten list of notes made by IRS Agent Cascante in his initial review of select returns prepared by Mr. Imariagbe for compliance with earned income tax credit regulations. Gov. at 26 (citing G. Ex. 106). It is, in fact, impossible to tell what this chart is cumulative of. It does not list names of taxpayers, so it is impossible to tell whether and to what extent it overlaps with the charged counts or the returns

---

[6] If you determine that the defendant committed the acts charged in the indictment and the other acts as well, then you may, but you need not, draw an inference that, in doing the acts charged in the indictment, the defendant acted knowingly and intentionally and not because of some mistake, accident, or other innocent reasons.

JA 89.

listed on Exhibit 203. It lists business names, but only a couple of these overlap with each other, the charged counts, or the counts on exhibit 203. The jury was not told that Mr. Imariagbe had guilty knowledge with regard to any of the items listed on these returns – in fact, the Government was expressly forbidden to make that conclusion for the jury. *See supra* note 3. This chart does not nothing to minimize the impact of the court's error in admitting exhibit 203.

Finally, the Government contends the error was harmless because the evidence was "overwhelming." It was not. The Government's witnesses were simply not credible. Not a single one of them, apparently, noticed that their tax returns – some of them across two or three years - included a business they had never heard of. More importantly, they testified from a position of extreme self-interest: each avoided paying any of their unjustly earned money back, and avoided prosecution or penalty by blaming Mr. Imariagbe for the false information on their returns.

The Government was able to present Exhibit 203 to the jury and, through it, simply tell the jury that Mr. Imariagbe committed the same offense on 38 other occasions, too, without the pesky problem of calling witnesses or providing any other evidence beyond speculation that he had actually done so. The error was not

harmless. [7]

## CONCLUSION

For the foregoing reasons, Mr. Imariagbe respectfully requests that this Court reverse his convictions.

Respectfully submitted,

/s/
Marta K. Kahn
The Law Office of Marta K. Kahn, LLC
8 E. Mulberry St.
Baltimore, MD 21202
(410) 299-6966
*Counsel for Appellant*

---

[7] On several occasions in its brief, the Government cites evidence presented and conclusions made the by the judge at sentencing. *See* Gov. at 8 ("In total, defendant prepared at least 38 false returns..."); Gov. at 28 ("at the sentencing hearing, the government proved that the defendant prepared at least 23 additional tax returns claiming falsely inflated refunds based on fictitious Schedule C information.") As the Government is surely aware, this fact has no bearing on the jury's function and findings.

## CERTIFICATE OF COMPLIANCE

1.   This brief has been prepared using
     __X__   Fourteen point, proportionally spaced, serif typeface (such as CG Times or Times New Roman, NOT sans serif typeface such as Arial). Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, CG Times, 14 point):

     __WordPerfect 12, Times New Roman, 14 point__

2.   EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules or regulations, and the certificate of service, the brief contains

     __2268__   Words (give specific number of words; may not exceed 13,000 words for opening or answering brief or 6500 for reply brief);

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or a copy of the work or line print-out.

                    __/s/     Marta K. Kahn__
                         Signature of Filing Party

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 15th day of December, 2016, a copy of the foregoing Reply Brief was served via ECF on Mark Determan, United States Department of Justice.

_____/s/_____
Marta K. Kahn